UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

| | |
|---|---|
| SO-SO DEF RECORDINGS, INC, | ) |
| SO-SO DEF PRODUCTIONS, INC and | ) |
| JERMAINE DUPRI MAULDIN p/k/a JERMAINE | ) |
| DUPRI | ) |
|         Plaintiffs | ) Action No. |
| v. | ) |
| | ) COMPLAINT |
| SONY MUSIC ENTERTAINMENT | ) |
|         Defendant | ) |
| | ) |

## JURISDICTION

1.      This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. 1332 because: (a) this action is between citizens of different states; and (b) the matter in controversy exceeds $75,000.00 exclusive of interest and costs. This Court has personal jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367(a). Venue is proper in this District pursuant to 28 U.S.C. §1391(b) because a substantial part of the events or omissions giving rise to this action, including certain unlawful actions alleged herein, occurred in this District.  The defendant is domiciled in this District and conducts business in this District.

2.      Pursuant to numerous contracts between the parties, New York law governs the dispute.

## PARTIES

3.      So-So Def Recordings, Inc. ("SSDR") is a Georgia entity with an address of 8735 Dunwoody Place, STE N, Atlanta, GA, 30350.

4.      So-So Def Productions, Inc. ("SSDP") is a Georgia entity with an address of 8735 Dunwoody Place, STE N, Atlanta, GA, 30350.  SSDR and SSDP are collectively "So-So Def".

5.      Jermaine Dupri Mauldin p/k/a "Jermaine Dupri" ("JD" or "Dupri") is a Georgia  resident with a business address of 8735 Dunwoody Place, STE N, Atlanta, GA, 30350. Dupri is the primary shareholder in SSDR and SSDP.

6.      Sony Music Entertainment ("SME") has a business address of 25 Madison Ave., New York, NY 10010.

1

## INTRODUCTION

7.      So-So Def is one of the most identifiable hip-hop recording labels in history.

8.      Dupri, the mastermind behind So-So Def, and the southern hip-hop sound, is one of the biggest hitmakers in hip-hop music, ever.  Dupri has jump started the careers of artists such as Bow Wow, Xscape, Da Brat, Bone Crusher, 3LW and others.  Dupri has produced and released albums and music with some of the biggest superstars in entertainment, such as Mariah Carey, Usher, Ludacris, TLC, and Janet Jackson.

9.      Dupri has received a total of 12 Grammy nominations in his career. In 2006, Dupri won a Grammy Award for Best R&B Song for the track "We Belong Together", which he co-wrote with Mariah Carey and Johntá Austin. This song alone has over 920,000,000 streams to date.[1]

10.      Dupri is a musical icon whose recordings on So-So Def and production with other artists have produced over $200,000,000  in gross revenue in the music industry.

11.      In 2018, Dupri was inducted into the Songwriters Hall of Fame for his accomplishments with So-So Def.[2]  In 1992, So-So Def began its contractual relationship with SME.

## CONTRACTS BETWEEN THE PARTIES

### May 1992 Label Agreement

12.      On May 4, 1992, SSDR entered into an agreement with SME (the "Label Agreement") pursuant to which SME engaged SSDR to sign performers to recording agreements and submit such recording artists (each, a "Submitted Artist") to SME. Under the terms of the Label Agreement, SME pays to SSDR a portion of the profits generated by SME with respect to Submitted Artist recordings, of which (i) the amount payable to the applicable Submitted Artist under such Submitted Artist's contract with SSDR (inclusive of any royalties payable to third party producers of the applicable recordings) is deemed the "Artist Share" and (ii) the balance is deemed the "Production Share". The Artist Share and Production Share of royalties payable to SSDR under the Label Agreement are cross-collateralized with respect to all Submitted Artists.

13.      The Label Agreement also provides for a royalty payable to producers of the recordings subject to the Label Agreement. Originally, the Label Agreement capped the royalties payable to such producers at 8% of USNRC Net Sales and provided that such royalties would be treated as an advance under the applicable Submitted Artist's recording agreement.

---

[1] We Belong Together by Mariah Carey - Spotify Stream Count
[2] Jermaine Dupri | Songwriters Hall of Fame

14.    Following SSDR's entry into the Label Agreement, SSDR entered into recording agreements thereunder with the following Submitted Artists:

-Xscape
-Da Brat
-Whodini
-Neena

**November 3, 1994: Modification of Label Agreement**

15.    The Label Agreement was modified on November 3, 1994 (the "Modification"). The Modification established an "Extended Term" with updated cross-collateralization provisions. The Modification also expressly provided for a producer royalty payable to Dupri with respect to recordings produced by Dupri during the Extended Term, capped at 6% of USNRC Net Sales.

16.    During the Extended Term of the Label Agreement, SSDR entered into a recording agreement with the Submitted Artist Jagged Edge (August 1, 1996) and other Submitted Artists.

**December 19, 1997: JV Agreement**

17.    On December 19, 1997, prior to the expiration of the term of the Label Agreement, SSDR and SME entered into a joint venture agreement (the "Original JV Agreement") pursuant to which SSDR and SME established GANY Records, LLC ("GANY"), a joint venture established for the purpose of signing recording artists (each, a "JV Signed Artist") and owned 50% by SME and 50% by SSDR with the operations thereof managed by SSDR. The Original JV Agreement was modified by modification agreements dated as of December 2, 1998, January 22, 1999, and December 1, 2000, and subsequently superseded by another joint venture agreement dated January 1, 2001, effective as of January 1, 1998 (the "JV Agreement"). Pursuant to the JV Agreement, SME funded the operations of GANY via loans. GANY made profit advances to SSDR, and SME and SSDR split the profits of GANY equally subject to recoupment of profit advances made by GANY to SSDR.

18.    Following the establishment of GANY, GANY entered into recording agreements with the following JV Signed Artists:

-Dupri, pursuant to an agreement dated April 17, 1998 between SSDP f/s/o Jermaine Dupri, on the one hand and GANY Records, LLC f/k/a Q Records, on the other hand (the "Artist Agreement")
-R.O.C.
-Tigah
-Fundisha
-Jagged Edge

3

19.     Additionally, recordings of the following Submitted Artists released on or after December 1, 1997 were transferred from SSDR to GANY and were made subject to the terms of the JV Agreement rather than the Label Agreement, together with all then-unrecouped balances under the applicable recording agreements:
    -Xscape
    -Da Brat

20.     The JV Agreement also set forth terms respecting Dupri's production services, which included a set royalty rate with respect to services provided by Dupri to JV Signed Artists of 8% of USNRC Net Sales for production services and 2% of USNRC Net Sales for remixing services. Under the Original JV Agreement, Dupri also received a "Producer/Remixer Advance" of $2,750,000, which pursuant to the JV Agreement was made recoupable against all monies payable to Dupri with respect to his production services (regardless of whether or not for JV Signed Artists).

**November 14, 2002: JV Buyout**

21.     Pursuant to the agreement dated November 14, 2002 between SSDR and SME (the "Buyout Agreement"), (i) SME bought out SSDR's 50% equity interest in GANY and all of SSDR's rights to past and future recordings of the JV Signed Artists Jagged Edge and R.O.C. delivered under such JV Signed Artists' agreements with GANY, and (ii) GANY transferred to SSDR all of its rights to future recordings delivered by the JV Signed Artists Dupri, Da Brat, Xscape, Tigah, and Fundisha after the date of the Buyout Agreement (for clarity's sake, recordings delivered by such JV Signed Artists prior to November 14, 2002 would remain subject to the JV Agreement).

22.     The Buyout Agreement also expressly provides that (i) none of SSDR, SSDP, or Dupri would have any right to receive a share of profits from GANY from and after October 8, 2002, and (ii) SME would have no right to receive any portion of Dupri's producer advances or royalties from any project commenced after the date thereof.

**January 10, 2003: Arista Label Agreement and Arista Producer Agreement**

23.     On January 10, 2003, (i) SSDR entered into an agreement with Arista Records[3] ("Arista") (such agreement, the "Arista Label Agreement") pursuant to which SSDR submitted to Arista the exclusive recording services of certain recording artists ("Arista Label Artists"), and (ii) SSDP entered into an agreement with Arista (the "Arista Producer Agreement") pursuant to which SSDP furnished to Arista the exclusive producer services of Dupri (with exceptions made to allow Dupri to produce certain albums by Bow Wow and Jagged Edge).

---

[3] Arista is a SME owned entity.

4

24.    Under the Arista Label Agreement, Arista paid to SSDR a royalty on top of the royalty paid by Arista to the applicable Arista Label Artist (the "Label Share Royalty"), subject to a cap. The Label Share Royalty with respect to each Arista Label Artist is not cross-collateralized against the Label Share Royalty with respect to any other Arista Label Artist.

25.    Under the Arista Producer Agreement, Arista paid to SSDP a producer royalty (the "Arista Producer Royalty"). The Arista Producer Royalty payable with respect to any recording artist project produced by Dupri was not cross-collateralized against the Arista Producer Royalty that was payable with respect to any other recording project. SSDP received a $6,000,000 advance in connection with the Arista Producer Agreement, which was paid $4,000,000 upon execution of the Arista Producer Agreement and an additional $2,000,000 payable in quarterly installments over the term of the Arista Producer Agreement.

**December 31, 2004: Termination of Arista Label Agreement and Amendment of Arista Producer Agreement**

26.    On December 31, 2004, Arista and SSDR mutually agreed to terminate the Arista Label Agreement. The Arista Label Artists were split into two groups:

*Group 1*- Recordings made by the recording artists Bone Crusher, Anthony Hamilton, J-Kwon, 3LW, and Jarvis (collectively, the "Retained Artists") were retained by Arista. Arista continued to pay a Label Share Royalty with respect to recordings released by the Retained Artists prior to December 31, 2004, but with respect to recordings released by the Retained Artists following December 31, 2004, Arista instead paid SSDR an override royalty (the "SSDR Override Royalty"). Arista was, however, granted the right to withhold the SSDR Override Royalty in part until all Unallocated Advances under the Arista Producer Agreement were recouped.

*Group 2*- All recordings made by the recording artists Da Brat, Daz Dillinger, Brooks Buford, and Miss B (collectively, the "Released Artists"), as well as all recordings included on the compilation album *SoSoDef Presents the Dirty South*, were assigned to SSDR (with the exception of any recordings released by Da Brat prior to December 31, 2004, which remained with Arista with Arista continuing to pay a Label Share Royalty to SSDR subject to recoupment of the Unallocated Advances). SSDR or its distributor, as applicable, assumed the obligation to pay Arista an override royalty on exploitations of any future recordings by the Released Artists (except for Miss B).

5

27.     Also on December 31, 2004, Arista and SSDP entered into an amendment to the Arista Producer Agreement (the "2004 Arista Producer Agreement Amendment"). The 2004 Arista Producer Agreement Amendment addressed advances in the amount of $2,833,333 that had been paid to SSDP under the Arista Producer Agreement, but which had not been allocated to specific recordings produced by Dupri (the "Unallocated Advances"). Arista was permitted to withhold royalties payable to SSDR or SSDP under the Arista Label Agreement or Arista Producer Agreement, as applicable, in proportion to a set number of recordings Dupri was required to produce for Arista recording artists over the remaining term of the Arista Producer Agreement; if upon the expiration of the Arista Producer Agreement, Dupri had failed to produce all of the required recordings, SSDP would have the option to reimburse Arista for the remaining Unallocated Advances or convert such remaining Unallocated Advances into a general advance against which any royalties payable to SSDP under the Arista Producer Agreement (regardless of artist project) would be recoupable.

28.     On November 14, 2006, the Arista Producer Agreement was amended further (the "2006 Arista Producer Agreement Amendment") to (i) reduce the number of recordings required to be produced by Dupri thereunder prior to the expiration thereof from twenty-five (25) to seven (7) and (ii) reduce the amount of Unallocated Advances to approximately $1.2 million. The 2006 Arista Producer Agreement Amendment notably provided that no royalties payable to SSDP in connection with the subsequent album released by Usher would be withheld prior to recoupment of the Unallocated Advances.

**November 1, 2025: Tolling Agreement**

29.     In 2023, Plaintiffs began to suspect that SME had not paid all of the royalites due Plaintiffs for multiple releases over a substantial period of time. Beginning in 2023, SME provided new and amended royalty statements to Plaintiffs for the first time as described below in this Complaint.  On November 1, 2025, the parties entered into a Tolling Agreement  in order to afford the parties time to discuss the Plaintiffs' claims of approximately $18,000,000 in unpaid royalites relating to the contracts identified above.

**FACTS**

30.     So-So Def had a 32-year contractual and business relationship with SME. As it turns out, many of  SME's dealings with So-So Def have not been lawful and have harmed So-So Def in its business.

31.     SME failed to properly account and report to the Plaintiffs.  SME underreported producer royalties for the album by the recording artist Xscape – *Hummin' Comin' At 'Cha*, released in 1993. Plaintiffs contend that over $960,000 in producer royalties have been unlawfully held by SME.

32.     SME failed to properly account and report to the Plaintiffs.  SME underreported producer royalties for the album by the recording artist Da Brat – *Funkdafied*,  released in

6

1994. Plaintiffs contend that over $1,000,000 in producer royalties have been unlawfully held by SME.

33.     SME never reported producer royalties or override royalties to Plaintiffs for services rendered in connection with the first two (2) albums by the recording artist Kris Kross, *Totally Krossed Out* (1992) and *Da Bomb* (1993), until 2023. In excess of $2,200,000 is owed to Plaintiffs in monies unlawfully withheld by SME. SME contended that it was unaware that it never reported royalties to Plaintiffs relating to Kris Kross. Royalty statements produced in 2023 and 2024 establish foreign sales in excess of $33,000,000 for Kris Kross's royalty account . See Exhibits 1 and 2. SME has failed to pay SSDP and SSDR on millions of units sold relating to Kris Kross.

34.     A  review of  statements SME rendered to Plaintiffs in 2023 for producer services in connection with Jagged Edge's album entitled *The Jagged Era (*released in 1997),  indicate that SME was now reporting previously unreported royalties in the new amended statements. However, the sales periods for the previously unreported royalties only go back as far as 2007. Millions of dollars are owed to the Plaintiffs for Jagged Edge's *The Jagged Era*. SME attempted to conceal the fact that additional monies were due to Plaintiffs and altered royalty statements going back multiple years.

35.     Given that the matter of unreported producer royalties is not an isolated issue, evident by the above, it is likely that SME did not report producer royalties to Plaintiffs for producer services rendered in connection with other artists associated with the So-So Def/SME deals. Additional royalties due to Plaintiffs have yet to be determined

36.     Given the systemic pattern of (1) underreporting royalties (2) failure of reporting royalites and (3) altering and/or updating statements to report previously earned royalties, SME has engaged in willful deceitful actions designed to harm Plaintiffs in their business.

37.     SME failed to remit royalty payments to So-So Def by incorrectly cross-collateralizing unrecouped account balances against royalties otherwise payable to So-So Def, including Dupri's solo album releases and compilation albums. These actions harmed Plaintiffs in an amount in excess of $2,900,000.

38.     Paragraph 10 of the Label Agreement sets forth the recoupment terms of the Artist Share and the Production Share. SME may only recoup an artist's advances from So-So Def's Production Share to the extent a particular artist's royalties are not sufficient to recoup their advance. So-So Def's Production Share account applicable to Xscape's first two (2) albums, *Hummin' Comin' At 'Cha* (1993) and *Off the Hook* (1995) (account# S60837001) had a beginning balance of -$1,531,241.22 for the period ending June 30, 2020. It is unfathomable that Xscape's royalties were insufficient to recoup the entirety of Xscape's advances on LP1 and LP2 — both albums were certified platinum by the RIAA — let alone to leave such a staggering unrecouped balance 25-30 years later. SME did not remit any royalty payments in connection with the aforementioned So-So Def Production Share account, despite it generating over $1,000,000 in royalties from 2020-2024, due to the unrecouped balance.

39.    Moreover, in 2021, SME instituted its Artists Forward Legacy Unrecouped Balance Program whereby SME committed to forgiving unrecouped balances originating 20 years or more in the past.[4] Accordingly, even if a portion of Xscape's original advances for LP1 or LP2 remained, such unrecouped balances should have been nullified by SME's Artists Forward Legacy Unrecouped Balance Program, resulting in a payment of approximately $1,000,000 to So-So Def for the account in connection with Xscape's LP1 and LP2 (Account # S60837001) alone.

40.    There are numerous So-So Def Production Share and producer royalty accounts impacted by unrecouped balances or contract holds preventing payments of royalties otherwise due to Plaintiffs.

41.    SME also understated So-So Def's Production Share royalties for Xscape's first two albums by utilizing incorrect royalty rates. SME underreported in excess of $144,000 in royalties.

42.    SME understated So-So Def's Production Share royalties for Da Brat's first two (2) albums by utilizing incorrect royalty rates. SME underreported in excess of $36,000 in royalties.

43.    SME also understated royalties payable to So So Def for producer services rendered in connection with Xscape's second album (LP2), *Off the Hook*. SME underreported in excess of $22,000 in royalties due to the use of the incorrect royalty rates.

44. SME understated royalties payable to So So Def for producer services rendered in connection with Da Brat's (LP2), *Anuthatrantrum*. The amount owed to Plaintiff is undetermined.

45.    SME has understated royalties payable to So-So Def in connection with albums released by artists, including, but not limited to, Mariah Carey, Bow Wow, Usher, J-Kwon, Jermaine Dupri, and Bone Crusher. The amount of additional royalties due is yet to be determined pursuant to the Arista agreements. The amount of additional royalties due may be determined by the Arista agreements, or by the Sony Music agreements or separate letters of direction.

46.     Plaintiffs are also due in excess of $10,000,000 in interest payments pursuant to CPLR § 5004 for unpaid royalites relating to Xscape, Kris Kross, Da Brat and potentially other artist releases.

47.    Plaintiffs provided SME with a desk audit report for the damages identified above from Gelfand, Rennert & Feldman ("GRF") substantiating the damages alleged in 2025. The report is incorporated by reference.

48.    Plaintiffs were unaware of SME's tactics in regard to (1) accounting (2) failing to report royalites (3) underreporting royalties and (4) altering previous royalty reports, until GRF's desk audit in 2025 discovered SME's actions. Plaintiffs' recordings as a JV partner to SME, recording label and/or producing partner with SME, created gross

---

[4] Legacy Unrecouped Balance Program | Artists Forward and Sony Music to expand unrecouped balance program to more artists and songwriters - Music Business Worldwide

revenue in excess of $200,000,000 associated with Xscape, Da Brat, Kris Kross, Usher, Mariah Carey, and others over the last 32 years.

49.    There are at least seven (7) contracts between the parties governing their relationship over 25 years. Millions of dollars were being paid as royalties or operational loans to  entities owned by Duprri.  SME knew that it was violating the contracts with the Plaintiffs and never attempted to disclose its contemptuous accounting practices to the Plaintiffs. SME has harmed Plaintiffs in their business in an amount in excess of $18,000,000.

50.     SME never reported producer/override royalties to Plaintiffs for services rendered in connection with Kris Kross's first two albums (LP1 and LP2), *Totally Krossed Out* (1992) and *Da Bomb* (1993) prior to 2023. In excess of  $2,200,000.00 is owed to Plaintiffs in monies unlawfully withheld by SME. SME contended that it was unaware that it never reported royalties to Plaintiffs relating to Kris Kross.

51.    A  review of  statements SME rendered to Plaintiffs in 2023 for producer services in connection with Jagged Edge's *The Jagged Era (*released in 1997),  indicate that SME  was now reporting previously unreported royalties beginning in 2023,  in amended statements. However, the sales periods for the previously unreported royalties only go back as far as 2007. Millions of dollars are owed to the Plaintiffs for this release due to reporting errors of SME.

52.    Pursuant to the contracts identified in Counts 1 & 2 of the Complaint, SME had a duty and obligation  to disclose and properly account to the Plaintiffs.

53.    SME concealed the fact that additional monies were due to Plaintiffs and altered royalty statements going back multiple years relating to recording artists Da Brat, Xscape, and Jagged Edge.

54.    SME attempted to conceal all Kris Kross royalites due Plaintiffs for over 20 years in a separate  royalty accounting system unknown to Plaintiffs.  SME pretextually claimed it was unaware of its failure to account  to Plaintiffs. SME intentionally failed to account to Plaintiffs to avoid paying millions of dollars to the Plaintiffs.

55.    SME provided Plaintiffs' a Kris Kross royalty statement in 2023-2024 which indicated over $30 Million Dollars in foreign sales and SME has underpaid SSDP in an amount of no less than $2,200,000.  SME refused to pay the funds to Plaintiffs.

56.    Plaintiffs relied on the representations of SME during its 30-year relationship and never expected SME to amend old statements to avoid paying royalites.

57.     Plaintiffs relied on the representations of SME during its 30-year relationship and never expected SME to deceptively avoid the inclusion of royalites due to Plaintiffs for Kriss Kross albums. SME  kept Kriss Kross royalites  in a separate accounting system for which Plaintiff had no access and did not pay Plaintiffs.

58.    SME's breaches of the contracts harmed the Plaintiffs in their business.


## COUNT I
## BREACH OF CONTRACT Label Agreement and Modification
## PLAINTIFFS AGAINST SME

59.    Plaintiffs reallege paragraphs 1-58 above.

60.    Under New York law, the following elements must be established for a breach of contract claim: (1) a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) breach by the defendant; and (4) damages. See *Noise in Attic Prods., Inc. v London Records*, 10 AD3d 303, 307 (1st Dept 2004); *Furia v Furia*, 116 AD2d 694, 695 (2d Dept 1986).

61.    SME and the Plaintiffs signed the Label Agreement and Modification and any amendments or successor-in-interest agreements described above.

62.    SME had a duty to (1) properly account and (2) pay royalites to Plaintiffs for the recordings associated with recording artists Kris Kross, Xscape, Bone Crusher, Jagged Edge, Da Brat and potentially others.

63.    SME failed to account to Plaintiffs and pay the proper (1) So-So Def's Production Share and failed to pay  (2) So-So Def for producer services.

64.    The actions of SME have harmed the Plaintiffs in their business.


## COUNT II
## BREACH OF CONTRACT
## 2003/2004/2006 Amended Arista Label & Producer Agreements
## PLAINTIFFS AGAINST SME

65.    Plaintiffs reallege paragraphs 1-64 above.

66.    Under New York law, the following elements must be established for a breach of contract claim: (1) a valid and enforceable contract; (2) the plaintiff's performance of the contract; (3) breach by the defendant; and (4) damages. See *Noise in Attic Prods., Inc. v London Records*, 10 AD3d 303, 307 (1st Dept 2004); *Furia v Furia*, 116 AD2d 694, 695 (2d Dept 1986).

67.    SME and the Plaintiffs signed contracts in 2003, 2004 and 2006 that modified each other.

10

68.    SME had a duty to (1) properly account and (2) pay royalites to Plaintiffs for the recordings associated with recording artists Mariah Carey, Bow Wow, Usher, Jagged Edge,  Da Brat, 3LW, Anthony Hamilton,  and potentially others.

69.    SME failed to account to Plaintiffs and pay the proper (1) So-So Def's Production Share and failed to pay  (2) So-So Def for producer services.

70.    The actions of SME have harmed the Plaintiffs in their business.


**COUNT III**
**BREACH OF IMPLIED CONVEANT OF FAIR DEALING**
**Label Agreement and Modification**
**<u>PLAINTIFFS AGAINST SME</u>**

71.    Plaintiffs reallege paragraphs 1-70 above.

72.    SME and the Plaintiffs signed the Label Agreement and Modification and any amendments or successor-in-interest agreements described above.

73.    In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Kirk La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (N.Y. 1933).

74.    Since *Kirk La Shelle*, the courts in New York have implied a covenant of good faith and fair dealing in the course of the performance of all contracts. *See, e.g., Van Valkenburgh, Nooger & Neville v. Hayden Publ. Co.*, 30 N.Y.2d 34, 45 (N.Y.), *cert. denied*, 409 U.S. 875 (1972);

75.    SME has violated the covenant of good faith and fair dealing in the performance of the contracts. SME's tactics in regard to (1) accounting (2) failing to report royalties (3) underreporting royalties and (4) altering previous royalty reports violated New York law.

76.    Plaintiffs were unaware of SME's violations, until GRF's desk audit in 2025 discovered the unlawful tactics.

77.    SME's unlawful actions violated the rights of the Plaintiffs.


11

## COUNT IV
## BREACH OF IMPLIED CONVEANT OF FAIR DEALING
### 2003/2004/2006 Amended Arista Label & Producer Agreements
### PLAINTIFFS AGAINST SME

78.    Plaintiffs reallege paragraphs 1-77 above.

79.    SME and the Plaintiffs signed the 2003/2004/2006 Amended Arista Label & Producer Agreements and any amendments or successor-in-interest agreements described above.

80.    In every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract, which means that in every contract there exists an implied covenant of good faith and fair dealing." *Kirk La Shelle Co. v. Paul Armstrong Co.*, 263 N.Y. 79, 87 (N.Y. 1933).

81.    Since *Kirk La Shelle*, the courts in New York have implied a covenant of good faith and fair dealing in the course of the performance of all contracts. *See*, *e.g.*, *Van Valkenburgh, Nooger & Neville v. Hayden Publ. Co.*, 30 N.Y.2d 34, 45 (N.Y.), *cert. denied*, 409 U.S. 875 (1972);

82.    SME has violated the covenant of good faith and fair dealing in the performance of the contracts. SME's tactics in regard to (1) accounting (2) failing to report royalites (3) underreporting royalties and (4) altering previous royalty reports violated New York law.

83.    SME's unlawful actions violated the rights of the Plaintiffs.


WHEREFORE, The Plaintiffs demand a jury trial and the following:

1.    Judgment on all counts and amount to be determined by the Court and no less than $18,000,000.00;
2.    Interest;
3.    Attorneys' Fees;
4.    Any other relief this Court deems just and equitable.

SO-SO DEF RECORDINGS, INC,
SO-SO DEF PRODUCTIONS, INC   and
JERMAINE DUPRI MAULDIN p/k/a JERMAINE
DUPRI
By Their Attorneys,

*Christopher Brown*

Christopher Brown
Brown & Rosen LLC
Attorneys At Law
100 State Street, Suite 900
Boston, MA 02109
617-728-9111 (T)

Dated: July 6, 2026                              cbrown@brownrosen.com

# EXHIBIT 1

**SONY MUSIC**

# EARNINGS - DETAIL STATEMENT

**Statement: S55866009-018 for period ending: 06/30/2023**

**Contract S70008124**    **: KRIS KROSS LP1/DUPRI**
**Vendor   1207993**    **: SO SO DEF PRODUCTIONS INC**

| Catalog No. | Country of Sale | Config | Sales Period | Dist. Channel | Price Level | Base Price$ | Contr. Ded.% | Price Basis | Roy. Rate% | Conf Ded.% | Prc. Ln. Ded.% | Dst. Ch. Ded.% | Terr. Ded.% | Oth. Ded.% | Part % | Effective Rate$ | Sales Units | Net % | Pay Units | Tax% | Royalty Payable(USD) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G010000614188F | Spain | AudTrack | 2021 H1 | SETTLEPD | FULL | 0.000767 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000060 | 25 | 100.00 | 25 | 0.00 | 0.00 |
| G010000614188F | Thailand | AudTrack | 2023 H1 | ADSUPPOR | FULL | 0.000189 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000015 | 5 | 100.00 | 5 | 0.00 | 0.00 |
| G010000614188F | Austria | AudTrack | 2023 H1 | PAIDSUBS | FULL | 0.005560 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000433 | 8 | 100.00 | 8 | 0.00 | 0.00 |
| G010000614188F | Germany | AudTrack | 2022 H2 | ADSUPPOR | FULL | 0.002277 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000177 | 17 | 100.00 | 17 | 0.00 | 0.00 |
| G010000614188F | Colombia | AudTrack | 2023 H1 | PAIDSUBS | FULL | 0.000814 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000063 | 21 | 100.00 | 21 | 0.00 | 0.00 |
| G010000614188F | Costa Rica | AudTrack | 2023 H1 | PAIDSUBS | FULL | 0.006292 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000490 | 1 | 100.00 | 1 | 0.00 | 0.00 |
| G010000614188F | Mexico | AudTrack | 2021 H1 | SETTLEPD | FULL | 0.000789 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000061 | 25 | 100.00 | 25 | 0.00 | 0.00 |
| G010000614188F | Japan | AudTrack | 2022 H2 | DL-CONDI | FULL | 0.006117 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000476 | 6 | 100.00 | 6 | 0.00 | 0.00 |
| G010000614188F | Canada | AudTrack | 2023 H1 | PAIDSUBS | FULL | 0.004485 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000349 | 44 | 100.00 | 44 | 0.00 | 0.02 |
| G010000614188F | Spain | AudTrack | 2023 H1 | PAIDSUBS | FULL | 0.006053 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000471 | 5 | 100.00 | 5 | 0.00 | 0.00 |
| G010000614188F | Namibia | AudTrack | 2023 H1 | BREAKPDS | FULL | 0.000325 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000025 | 2 | 100.00 | 2 | 0.00 | 0.00 |
| G010000614188F | Denmark | AudTrack | 2021 H1 | SETTLEPD | FULL | 0.001026 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000080 | 22 | 100.00 | 22 | 0.00 | 0.00 |
| G010000614188F | Argentina | AudTrack | 2022 H2 | PAIDSUBS | FULL | 0.000951 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000074 | 16 | 100.00 | 16 | 0.00 | 0.00 |
| G010000614188F | India | AudTrack | 2022 H2 | ADSUPPOR | FULL | 0.001199 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000093 | 5 | 100.00 | 5 | 0.00 | 0.00 |
| G010000614188F | New Zealan | AudTrack | 2022 H1 | BREAKPDS | FULL | 0.009742 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000759 | 8 | 100.00 | 8 | 0.00 | 0.01 |
| **Total G010000614188F** | | | | | | | | | | | | | | | | | | | **9,328** | | **1.88** |
| **Total You Can't Get With This** | | | | | | | | | | | | | | | | | | | **9,328** | | **1.88** |

**Total for Earnings Statement Ref: 1503137 Period: 01/01/2023 - 06/30/2023**     **12,960,172**     **3,327.01**

**TOTAL FOREIGN DIGITAL EARNINGS**     **12,960,172**     **3,327.01**

**TOTAL FOREIGN EARNINGS - DIGITAL**     **12,960,172**     **3,327.01**

(*) 0.0000 Base Price indicates a less than $0.0001 price reported by the Digital provider

# EXHIBIT 2

**SONY MUSIC**

# EARNINGS - DETAIL STATEMENT

Statement: S17655500-019 for period ending: 06/30/2024

**Contract S17655500**    **: KRIS KROSS/JERMAINE DUPRI T/P LP1**
**Vendor   1207993**    **: SO SO DEF PRODUCTIONS INC**

| Catalog No. | Country of Sale | Config | Sales Period | Dist. Channel | Price Level | Base Price$ | Contr. Ded.% | Price Basis | Roy. Rate% | Conf Ded.% | Prc. Ln. Ded.% | Dst. Ch. Ded.% | Terr. Ded.% | Oth. Ded.% | Part % | Effective Rate$ | Sales Units | Net % | Pay Units | Tax% | Royalty Payable(USD) |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| G010000614188F | Chile | AudTrack | 2024 03 | SETTLEPD | FULL | 0.000248 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000019 | 48 | 100.00 | 48 | 0.00 | 0.00 |
| G010000614188F | Palestine | AudTrack | 2024 03 | BREAKADS | FULL | 0.000365 | N/A | ASI | 7.79 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 100.00 | 0.000028 | 1 | 100.00 | 1 | 0.00 | 0.00 |
| **Total G010000614188F** | | | | | | | | | | | | | | | | | | | **11,861** | | **1.40** |
| **Total You Can't Get With This** | | | | | | | | | | | | | | | | | | | **11,861** | | **1.40** |

| | | |
|---|---|---|
| **Total for Earnings Statement Ref: 1601398 Period: 01/01/2024 - 06/30/2024** | **23,447,039** | **5,088.06** |

| | | |
|---|---|---|
| **TOTAL FOREIGN DIGITAL EARNINGS** | **23,447,039** | **5,088.06** |

| | | |
|---|---|---|
| **TOTAL FOREIGN EARNINGS - DIGITAL** | **23,447,039** | **5,088.06** |

(*) 0.0000 Base Price indicates a less than $0.0001 price reported by the Digital provider